The next case on the dock City of Red Bud v. Stines 5-19-0294 That's right, you see? May it please the court, counsel. I'm Alan Ferris. I'm specially appointed counsel for the City of Red Bud for this case. City of Red Bud is a non-home rule municipality located in Randolph County. Like most municipalities, it owns and operates its own utility system, provides customers with water service, sewer service, electric service, gas service. Today we are focused on the natural gas service and system of the city. The natural gas services are provided to customers upon the filing of an application by a prospective customer who agrees to pay all charges and services provided to the customer and as well agrees to abide by the ordinances of the city. In addition, what happens next is upon the receipt of the application, that application with the location to be served goes to the utility plant and they review the application, see what equipment is needed, lines to be run, installation meters, etc. When the customer is ready, when the equipment is in, then the installation takes place. Once installation is completed and tested, then it is set for turn-on for service. At that point, the utility plant issues a communique over to City Hall, notice that this location is now going to have natural gas service. The billing clerk at City Hall then installs that location with the software into the billing system for the city and that goes into the handheld meter reading devices. Then a bill for all the system is generated for any customer of any of these services is generated on postcard and you see on a postcard the customer's name, the location, the gas reading, the amount charged, the water reading, the sewer reading, the electrical reading, the utility tax reading, and so forth. In this case, in August of 2009, the office bar and restaurant was under construction and Melissa Steins, the manager, went to City Hall, filed an application for natural gas services. Those natural gas services and the installation was completed in early 2010. Was there a meter installed at that time? Yes. Was it recorded what the amount on that meter was? Yes. Was it zero? Fourteen, I think. Okay. All right. There is documentation. There was an exhibit offered at trial that showed that initial reading. What happened was no communique was received by City Hall and the billing clerk did not insert the location into the billing system. Services were provided, monthly bills generated for water, sewer, and electric, but no reference to gas service. And regrettably, this continued on for approximately seven years, more than 80 months, during which time the office bar and restaurant operated, had installed gas stoves, used it for their cooking at the restaurants, and continued in the same manner for that period of time in operation. There was no shutdown.  In January 2017, this issue came to surface and it was finally discovered that, hey, there was a meter there. Don't know whether it was obstructed by a dumpster, don't know exactly the circumstances, but there was the discovery and it was alerted to the utility superintendent, check this meter out because I don't think it's been read. Mr. Eckert, the superintendent, did that, immediately notified the mayor. The mayor and the administrator... And what was the reading at the time? Do we know? Yes, several hundreds of thousands. But we know the exact number. Yes, it's recorded, yes. Because the reason I'm wondering is there was a lot of dispute over the amount of the bill. Yes. And it seems to me that if you can read the beginning and you can read the end, then you know exactly how much was... You know how, excuse me, you know how much is used, but every month the cost and the charge for natural gas changes. So are you saying that the charge at the beginning of the month, or at the beginning when they started was different than in 2017? Every month. Every month. Every month the rate charge changes a little bit. That's why the ordinance allows for some estimates. Yes. So it's impossible to say how much usage was in October of 2013 versus November of 2014. It was one bulk usage, one bulk period of time. So the mayor met with the manager and the owners of the office and explained what had happened and told them they'd have to pay the bill. They'd have to pay for their usage. He also directed Mr. Eckert to do exactly what Your Honor said there was calculate an estimate. Look at the 83 months and look at the total bulk usage. Come up with an average price that was charged through that time frame and come up with what would be the average estimated charge. That was, with the utility tax and so forth, came up to $29,700. They had several meetings with the office owners. They tried to work out some kind of payment plan, but because no exact amount could be determined, the office refused to pay. After a couple board meetings, finally the city attorney was directed to send a demand letter and this litigation ensued. Was there a radical change in the rate of gas over those seven years, the cost bill? The cost, I mean, it fluctuates. There was an exhibit there that shows every month. Was there a radical deviation in the cost? Actually, some went down. The price fluctuates and actually throughout that period of time you see costs that do decrease throughout that time frame. It was not an escalating charge. It was fluctuating. At trial, the city obviously sued for breach of contract, that this application informs the customer that there's a contract. We provided the services. You haven't paid the amounts that we say are due. Defense stated that you can't tell us how much was owed, so we don't feel like we should have to pay. And your ordinance contemplates monthly bills. There were no monthly bills sent to us, so why should we have to pay? The trial court found for the defendants and basically said that the city had violated its own ordinance of the monthly billing and therefore could not claim performance or lack of performance on the defendant's side. So found for the defendant rendered a zero dollar judgment. It's submitted here before this court for us to interpret the language of the ordinances as paramount in this case because the trial court rested on these ordinances in its decision. So that would be the no vote review? Yes. In looking at the order of the trial court, the judge says there's a valid contract. So procedurally, preliminarily, it seems as though she found a valid contract. Now, I'm wondering what you think about that finding. Well, certainly we think there's a valid contract. But what does the validity of a contract in this context mean to you at the time she found a valid contract? I think it's a valid contract, services were performed. I'm not trying to trick you, but from our law school days, we know that there has to be an offer and an acceptance. Absolutely. It seems to me that we had an application, as you say. Absolutely. There's no doubt in anybody's mind that an application was filled out. No doubt. Was that the contract? I think the application and providing the services fulfilled the application. If you look at the application, it says this constitutes a binding contract. Right. So I was a little confused about how the ordinances mean. The court never says that the ordinances voided the contract. You see what I'm saying? I think that the court's order, to be honest with you. The way I interpret it is that you had a valid contract, but you can't claim non-performance because you did not perform in fulfilling your obligation of sending a monthly bill. Isn't that a permanent defense to a valid contract? Because what I'm looking at is the procedure that the court used. It didn't appear to me. Correct me if I'm wrong, that's what I'm asking. It didn't appear to me like there were any issues raised that would have been affirmative defense. For example, latches. Right. I think that they claimed latches was an affirmative defense, but I don't see anywhere in the record, and that's why I'm asking if I missed something, did the court ever reach those kinds of affirmative defenses? Early on, there was two motions for summary judgment. Yes. Partial summary judgment on liability. I saw those. And part of that dealt with the issues of latches. Right, but there were genuine issues of fact found, and so no summary judgment. It was never pursued in trial as far as the latches. But at the trial of this case, it seemed that the only issue addressed was the complaint. Now, maybe I'm wrong. Were all issues addressed, or was it just the validity of the complaint? Essentially, it was the complaint. It was the complaint for breach of contract. And, again, my reading of that order is that you didn't comply with your ordinances, you can't recover. And I think that's clearly against the intent of those ordinances. The ordinances say no free service. We can't be discriminatory against customers. Everybody's treated the same. Everybody pays their fair share. There's even an ordinance that says if you don't get a bill, you still owe the money. Now, not surprisingly, there's no ordinance on point that says if it takes 83 months to read your meter, here's what happens. It just isn't so great. Well, but isn't that what latches is all about, or clean hands? I mean, there's all kinds of doctrines, contractual doctrines that could be used. Those were dealt with. Those were dealt with. Yeah, those were dealt with. And there are issues as far as the – They were dealt with in reporting? No. They were dealt with preliminarily and not pursued by the defense. And, as well, there's substantial case law and latches against the government that is not allowed. Well, that's what was confusing to me is I didn't see where – I mean, this was almost like a summary judgment on the complaint. In other words, we're going to say whether the complaint is good or bad, and then if it's bad, you're out. But if it's good, it would seem that there could have been an argument by the office on this affirmative defense kind of issue. Which was never set forth. You never got that far because of the rulings of the court. Correct. And there's no evidence submitted as far as the prejudice or the undue delay or what have you. The essential elements of latches was not pursued. I mean, it was basically here's the facts. But, I mean, even under quantum merit, the office owners could have raised certain issues depending on how the court ruled. Sure. Other than latches being a bargain against government, a government. I mean, that was the main defense as far as the affirmative defense against latches. And that was all submitted in motions to strike affirmative defenses. But when we got to the trial, it was effectively the complaint. So if you have a, quote, valid contract, that contract has a meeting in the minds to provide what in this case? Provide gas services and pay for them. So contractually, there's a lot of law about what happens when the parties don't agree on price. And I don't see that raised. Was not raised. I don't see it raised as an issue. And in fact, the ordinances basically say in the application you agreed to pay the charges set forth by the city. And that's that monthly rate charge with the utility tax. There's an overall maintenance charge for the maintaining of the lines and so forth. And I see where Mrs. Stein's agreed that they got the gas. Yep. So we have performance to that extent. There was a question there I asked. And she said, I asked it, so the issue isn't whether you owe money, it's how much money you owe. And she said yes. I want to ask you a question out of left field. I'm going to ask your other counsel, just because I'm curious. You know, the Illinois appellate court rules allow for a mediation program if the 5th District decided to institute one. I think this is a case that could have benefited from that. We attempted mediation. I said that. We attempted mediation unsuccessfully. But yes, theoretically, I think so. I mean, just because of the cost of coming to the appellate court and things like that. Exactly. I'm just curious. Exactly. And I'll ask Mr. Lee. Just in summary, we think that the ordinances clearly show an intent to treat everybody fairly. You've got to pay your bill. Everybody's got to pay their bill. No discrimination. The case law is a case out of the 5th District. On 89 months of electric service that didn't get billed, the court basically said, admitted you got the service, you didn't pay for it, you owe it. And the estimated charges was upheld as a monthly average in that case was upheld if the consistency of the use was proven. And here we have consistency of the use by the office. It never changed. It was admitted, basically. They operated the same business from 2010 to 2017. So with that, we submit that judgment should be reversed and sent back to the court for findings not inconsistent with the court's order. Thank you. Thank you. Thank you. Your Honors, Mr. Ferris. Would you note your name? I'm sorry. I'm sorry. Lucas Leeper for the defendants in this case, the office bar and grill. Just to clear things up with the caption, there's an LLC that was ultimately, two LLCs that were ultimately in this case. They filed suit against the individuals, but we resolved that. And so it really is an issue with the LLCs. I'm sorry. But that's a side note. But I represented the defendants from the beginning of this case. Alan represented the plaintiffs from the beginning of this case. We did attempt mediation prior to proceeding to trial. We actually spent an entire afternoon at City Hall in Redbud mediating the case, and we just couldn't come up with a resolution that everyone could live with. I do want to state that. Mr. Leeper, do you think if the appellant court had given you the opportunity before you had to have your clients file, you know, spend all the money writing briefs, do you think that might have been beneficial? For my clients, I believe it would have been. And what I was going to say next was, my clients have never been – and I don't know if this helps or hurts my case, but I want to clear something up. It sounds like – They owe the money. Well, it sounds – you know, Mr. Ferris loves to say, well, they wouldn't agree to pay. That's not exactly true. We were at mediation, and we came to some numbers, and we just couldn't get it together. So to say that they weren't willing to pay anything is not true. And I don't think that sheds a fair light on them when it's stated that they don't agree to pay anything. But this case is about a breach of contract. They pled that there was a contract and that it was breached. So they have to prove the elements of breach of contract. So you denied there was a contract, or you did – part of the contract wasn't taken care of by the appellant? Correct. It comes to the third – or the second element, which is performance of the plaintiff. Did they perform their duties and obligations pursuant to the contract that existed? Well, the contract was to provide what? The contract – Or to provide gas? The contract was to provide gas and bill our client. That was the contract. If you look at the – Or was the contract to provide gas and for your client to pay? Well, I think it was for the – the contract was to provide gas, bill our client, and then our client paid. Because how can our client pay when they're never billed? But that goes to the issue of latches, unclean hands. Those are affirmative defenses in a contract. Contract formation – and I thought your arguments here were brilliant, by the way. The court found a valid contract. That's the – that is the finding of this court. Right. So if you have a valid contract, then the court doesn't say where the breach is. That's what I couldn't find. Maybe you can point it to me. Well, I don't know that – and it's been a while since I looked at that particular order, but I don't – Well, this is the order being appealed from, right? Right. Okay. And it's – I don't think she specifically delineates where the contract was breached, but that's the point. We don't get to whether or not the defendant breached the contract because you have to get through the first element, which is what's actually the second element, which is that the plaintiff's performed their obligations. But then you can't have a valid contract. I think that there can't – You either have a valid contract or you don't have a valid contract, right? And she says – and I'm reading from paragraph 13 now of her order, just for the record, you know, the recording. I'm looking at the June 18, 2019 order. And she says, In this case, the plaintiff established that a valid contract existed between the parties, wherein natural gas would be supplied by the plaintiff to your client, pursuant to the terms contained in the application. And then she cites the application in all sign. And then she goes on to say, However, the city of Redbud could not establish the existence of the remaining elements of its claim. So I personally don't understand how you can have a finding that there's a valid contract with all the elements and then say you don't have all the elements. It's counterintuitive to me. I need you to explain that. Well, so – and I laid out in my brief, to establish a successful claim for breach of contract, you have to, one, establish – But you never get to breach until you have a valid contract. Right. So the existence of a valid and enforceable contract, which the court found there was a contract, which includes the application that was signed by my client and the ordinances of the city of Redbud, the plaintiff. Because the ordinances of the city of Redbud plaintiffs – of the plaintiff, specifically state that the ordinances are part of and incorporated in the contract between the parties. But don't you think that if you go back to your law school days on how we get from meeting of the minds, that the ordinances become the description of how payment will be made? In other words, because the contract for the – Mr. Farrell said the amount changes every month. We can't enter into a contract that shows exactly what the payment amount is because it changes every month. So don't they incorporate those ordinances as a part of the payment term? Well, which is part of the contract. I mean, that's part of the contract. The application specifically says that the defendant or the applicant agrees to pay for all gas used on said premises at the rates provided by the ordinances of the city. And then the city goes on to say in their ordinances, these ordinances – and they use the word – are part of our contract. Right. So maybe they need to change their ordinances to what you're suggesting, Your Honor, because I think they shot themselves in the foot when they did that. They made their ordinances part of their contract. OK, but tell me why they shot themselves in the foot. Because I think you're – what you're saying is they incorporated the section of their ordinances which specifically say they shall bill you – shall bill you on a monthly basis. And if we miss a month, we shall bill you in the following month. And a month is considered 30 days, and I'm paraphrasing there. I can read it exactly, but it's quoted in both our briefs, I believe. So they have an obligation, not we may bill you, we will bill you when we get around to it. We shall bill you every 30 days, and if we miss a 30-day cycle, we shall bill you on the following cycle. If they don't follow, if they don't perform, which is the second element, performance by the plaintiff, if they don't perform their obligation pursuant to the contract, which is this application in their ordinances, then we don't get to the third element, which is the breach of the defendant, which is allegedly nonpayment. Because how can the defendant be held liable for nonpayment when they're not given notice pursuant to the contract what their charge is on a 30-day monthly basis? Well, the city can't give you the exact amount of payment from what we're being told. But then you can't have a valid contract. If there's no performance, you can't have a valid contract either. You either have a valid contract or you don't. I think we have a valid contract. That's the first element in proving there's a valid contract. No, what are the elements of a contract, of the formation of a contract? Offer, acceptance, consideration, and definitive in certain terms. Offer, acceptance, consideration, and? Definite in certain terms. Right. So the offer was made to provide gas service. It was accepted by your client. Right. Right. And then offer, acceptance, the consideration was the placement of the meter or whatever was done to provide the services, the wiring, whatever. Right. And then payment. I guess they have to perform at some point. Right, which is billing the defendants. Not providing the gas? Providing the gas and billing the defendants. Okay. That would be like in a real estate. I'm sorry. I'm sorry. So now I have, for the formation of a contract, we have the offer, the acceptance, which nobody disputes, the consideration, which nobody disputes, the providing the gas, which nobody disputes, but the payment terms, which are disputed. I don't believe they are. They don't deny that their ordinances say that they shall provide bills. Okay. I understand what you're saying. But that last item that you said is involved in the formation of the whole contract? It's part of the contract. If they violated their own ordinances, how do you have a valid contract? I'm trying to understand why the court used the term valid here. We had a valid contract that was formed in 2009 when this application was put in, accepted by... Accepted consideration of providing gas, but they didn't follow their ordinance. They didn't follow the terms of the contract, which were we shall bill you for your usage every 30 days. And it's very important, in my opinion, that... And that's why they... So what you're saying is the ordinance being incorporated allowed for the formation of the contract, but when they didn't bill after that first 30 days, they breached the overall contract. They didn't perform. The plaintiffs didn't perform. They didn't breach. They didn't perform. Well, what's different? Part of breach is valid contract, their performance, our breach. So a breach would have been they provided the gas, they sent us a monthly bill, and we didn't pay after we got the monthly bill pursuant to the terms of the contract. I thought you claimed they breached by not billing. I'm saying they didn't perform. Okay. I'm not sure I understand the difference. Okay, go ahead. I mean, I think you could... You could say breach or... I mean, I think the proper way is to say the performance by the plaintiff. Performance by the plaintiff is two things, providing the gas and billing pursuant to the ordinance, which is every 30 days. Well, the court certainly, and the reason I was asking about it is the court found in paragraph 14 that they didn't bill, and that was necessary to establish the performance. Correct. Correct. So that's why I was asking. Which is the second element of a breach of contract claim. There is a good faith element implicit in every contract, and it's a quite blatant faith. Seven years without receiving a bill, this is not a home user where they might have possibly been unaware of what was going on, but this is a business person that has to pay bills and invoices, and for seven years you don't get a bill. And then you come back and say, well, you know, you breached the contract. Where is the good faith here? Well, I actually thought about this last night when I was reading, and I thought about my own home. And granted, this isn't a residential business, but one important thing to understand is that they got a bill. The city of Redwood bills everything on one bill. So they were getting bills, and they were paying the bills that they were getting. So it's not like they were getting a separate bill for the gas. All of the utilities for the city of Redwood is billed on one billing card. It's a postcard that you get sent every month. Is there a differentiation between the various services, though? It says E for electric, G for gas, W for water. Now, when I was – and I was assuming and thinking you'd ask me this question today, and I'm going to tell you this, and I don't know that it's right or wrong, but this is my take on it. They never got it. So it's not like they got it, and then it stopped, and they noticed a change in the existing bill. I can tell you, and I'm embarrassed to say this, and I don't know if I should be, but I've lived at my house for five years now. I've never paid an electric bill. I've never paid a water bill. I've never paid our gas bill. I've never paid our cable bills. I don't know. My wife takes care of that. She pays it, and bless her heart, and I'm not saying she's not smart, but I can tell you when she's paying that electric bill and that gas bill, she doesn't know what she's looking at. She's paying what they're telling her to pay. She's writing the check. She's sending it in, and I think that's what happened here. Missy, the manager here, was getting the bill. It said this is what's due. She was writing the check. She was taking it over to the city. They weren't saying anything. I mean where is it? And it cuts both ways, I think. Where was the good thing on the city? They're produced. Was there any question asked? Did she go over the bill, and did she see that there was no gas on that bill? She knew for how many years that there was no payment for gas. I think her testimony in a nutshell is she didn't realize it. She didn't. She testified that she paid the bill and didn't realize that she had not paid for the gas. Is that in the testimony? That's it. She testified that I paid the bill that they sent me. I didn't look at the little notations. Quite honestly, I don't know that she would have knew what they were for. I think she just paid what they sent her, and I think it would have been a different story had they been billed for it at one point in time, and then it would have stopped, and your bill would have went from $500 to $300, and you're going, well, why did it go from $500 to $300? But this was from the beginning. They never sent the bill, so there was no marked change in the billing statement. And what I was going to say was I think it cuts both ways. I agree there's good faith implicit in every contract. They're printing the bill every month. Are they not reviewing that they've got a G and nothing next to it? Why does it fall on our clients when it's their job, part of their contract, is to perform and bill our clients every 30 days? And that's kind of the point here, and it gets back, and this is why I think mediation probably would have been helpful before an appellate hearing is our position has never been that we're right and you're wrong. I think and we think that everybody was wrong here. They were wrong for not billing us. We were wrong for probably not catching it. But the bottom line is this went on for not one year, not two years, not three, seven years. That's a long time. That was before I was an attorney that this opened up, and they started using gas and they didn't bill them for it. So I think that's a… What about unjust enrichment here? What about that doctrine? I'm sorry? The doctrine of unjust enrichment. There was a second count on unjust enrichment. What do we do with that? Well, if you have a valid contract, you can't have unjust enrichment. I know, but you said we don't have a valid contract because it didn't perform. Well, we do have a valid contract, and they didn't perform under the valid contract. That's what I'm saying. We have a valid contract, the application and the ordinances, and they didn't perform under the contract. They didn't do what they were supposed to do pursuant to the terms of the contract that we have. I'm just curious, looking at the dispute about the amount and the fluctuation and everything, and from what I heard represented by counsel for the appellant, that there wasn't necessarily a radical increase. Sometimes the rate went down. Was there ever an offer to accept the lowest rate and then apply that for the seven years? I believe. So here's another thing. There's the cost of the gas to the city. So every month the gas is piped in, and they pay a certain amount for it, and then they pass it on to the consumer, which are the residents of the city. But they add tax and a maintenance fee. So their initial demand was, we want you to pay an average of what our cost was and an average of the maintenance fee, and our position was, you want us to pay you to maintain a meter that you didn't read? I'm going to break this down. Is that maintenance fee just one fee for gas and the water that is provided? So you're saying they don't maintain the water meter either? The gas is different from my understanding. And I imagine there's trash, but is that different, too? The city of Redmond doesn't pick up their own trash. No, there's a separate, and Mr. Ferris can correct me if I'm wrong, there's a separate maintenance fee for the gas only that they apply to the gas. Now, is that shown separately or is that different? It's all just a product. My understanding is just here's your gas, but here's what you owe for the gas. And is that maintenance fee very on demand for the gas? Yes. I mean, it fluctuates with the gas. So I think there was an offer, if I recall correctly, Justice, that if I remember right, and don't quote me, I'd have to look back at my notes from mediation, but I believe it was $2.88 was the lowest cost, cost per month, not with the maintenance fees, just the cost, pure cost of the gas. For being hooked up. I'm sorry? For being hooked up. Right. Now, what's the maintenance fee then? So much for a cubic foot of gas? I don't know if it's a flat. To be honest with you, there's a maintenance fee I've got. So you're not objecting to paying the hookup, but you're objecting that it hasn't changed? Because the city could tell you what the hookup was. We pay for the hookup. We pay for the hookup up front. Oh, the hookup is not included? No. When we fill out this application, we pay for them to go out and install the meter and get everything started. So that's been paid. But there's no standard fee, even if you don't use any gas, like in the summertime maybe? I don't believe there is, but I know that one of the big sticking points when we were trying to settle was the maintenance fee, basically, the amount of money that the city makes or profits on the gas. And our position was we don't believe you should profit on providing gas when you didn't go out and do what you were supposed to. They did provide gas. They did provide gas. They did. They provided gas. So you're objecting to the maintenance fee? And the average. If we had to pay, as I stand here today, I'm comfortable in telling you on behalf of my clients that they'd be willing to pay the lowest cost that the city had for gas for this time period applied to the readings of the meter. You can take that to the back. We were willing to do that. We're willing to do that today, and I believe it was $2.88 if I remember properly. I'm just trying to figure out what you're saying. The maintenance fee does vary. Is that what you're saying? Or is it a standard rate? I think it's at a standard rate, and it's just tacked on to the varying gas rate. I don't think it's a percentage. I think it's a standard. It's $2.08 a month, no matter what? I think so. I think so. If I'm wrong, I don't want you to hold it against me, but I'm pretty sure that's what it is. We have the record. Right. But the gas, what's important is the gas is different every single month. I know gas. I'm worried about the maintenance. Is it different? It is not different every month. I don't think it is. I think it's tacked on to the gas. That's the answer. I think. You indicated your client was willing to pay the $2.88, which was the lowest amount, and not the maintenance fee. Correct. Because it was never maintained. And then what else was taxed? The tax? I think there's a little bit of tax on it as well. And then anything else that was involved? I think that's it. And another thing, too. Go ahead. We took all your time. Just quickly, I think another important thing is, you know, when I asked Mr. Eckert on the stand at trial that, you know, when was the exact date she discovered it, he didn't know. Sometime in January 2017. When did you start providing gas? Well, we're not really sure. Sometime early in 2010. I mean, these are all important things that they want to come in. We understand that. But didn't your client know? I mean, she knew when she lit the burner and opened for business. She couldn't remember. Okay. Thank you, Counselor. Thank you, Honor. And I'm sorry for picking on my wife. Okay. Your Honor, just to try and clear up a little bit of the confusion, number one, Ms. Steins was asked about getting the monthly bill that only had water, sewer, and electric. Never looked at it. Just paid and didn't consider it for 80 months. I hope she doesn't look at her food bill as to what supplies she gets that way and just pays it regardless of whether she gets lettuce or doesn't get lettuce or what have you. With respect to the monthly bill, there is a flat charge. Everybody who's a customer pays. Same charge. Everybody. No discrimination. And what is that charge? I believe it was $2. No, but is that a gas charge? That's just gas maintenance charge.  Gas maintenance charge. Everybody who's a gas customer pays that to start. So it's a maintenance charge. Yes. In addition, there's exhibits in the record where this meter was maintained, okay? There are meter readers who do nothing but go in and read the meter. There are maintenance technicians certified by the Commerce Commission who check for leaks, who check for corrosion on every meter. And those reports show that that meter was maintained in that respect. Okay. And that's in the record? Yes. All the updates? There's a report that has to get filed, yes. In addition, just to show the fluctuation, the figures, for example, January of 2010 is $8.97, the rate. The lowest is November of 2012, $4.71. Now, if you take the $2 off the $4.71, that's where you get the $2 some odd with change that they want to pay. We believe that they should have to pay an average of all of those because it averages out about $5.73. Mr. Ferris, what do you have to say about this lack of performance? Do you think that that is an element of breach or that's an element of formation? I think that's lack of performance would be breach in my opinion. So you would have a valid contract. And if you didn't perform your share, then you breached your agreement. With respect to, one other point, with respect to doctrine under contract law, impossibility of performance. I think that may enter in here, too. Why? Because they cannot go back. And there was no way you could tell me what November of 2013 was. And that was their point. Does that hurt you, though? You can't give me a bill, you can't give me a bill. But impossibility of performance, we have the right to estimate when we don't have that fact. But you also have excuse from performance. If something occurs that was not in contemplation of the parties when they signed the contract, certainly nobody ever contemplated that nobody had read this thing, the meter. It was never contemplated. That occurred. And now we can't correct it. It's impossible. The law will allow us to be excused from strict performance in that regard because it's impossible. And under the ordinances, certainly it doesn't deal with this specific fact situation, but if there's an inoperable meter, for example, we can estimate. If I contract with you to provide grain, and it's at so many cents a pound, and you provide that grain, and for some reason the payment term doesn't get into the work order, the contract, have I breached the contract, or is the payment term just something that then has to be figured out? I mean, do we still have a valid contract, or do we not have a valid contract? And we have the right in these circumstances, which are extremely rare and unusual, to estimate what you owe. So how is this court? Let's suppose that this court would find that the office owners owe something. Right. Then what would happen under your analysis? If we submit under the Panepinto case that the legitimate way of estimating has been upheld by this court as an average or synthesized average billing. But did that really get vetted completely at the trial court level? That is, how did everything work? Did the court stop short with this? Certainly, there's evidence submitted as to it, Mr. Eckert, as to the average billing. But I understand, but the court didn't find that it was owed. The court never got that far. Right. The court never got that far. So if, for example, this court would find that the city of Red Bug is owed something, then it would have to be revamped. Sent back for ascertainment of damages, yes. And that's why early on there were motions for partial summary judgments for liability that the gas was produced and used and consumed. We have a contract. We just don't know how much. So for those reasons, we'd like to ask the court to reverse. Thank you, counsel. Excuse me. Take my word for it. Thank you. I'll be in here in due course. The court at this time will take a short recess.